# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JEFFREY DALE BINGLEY,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     **Case No. CIV 16-439-RAW-KEW** |
| | ) |
| **RICK WHITTEN, Warden,** | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is a pro se state prisoner in the custody of the Oklahoma Department of Corrections who currently is incarcerated at James Crabtree Correctional Center in Helena, Oklahoma. He is attacking his convictions and sentences in LeFlore County District Court Case No. CF-2010-21 for Child Sexual Abuse (Count 1) and Possession of Child Pornography (Count 2), setting forth the following grounds for relief:

I.     Petitioner's partially recorded statement to the district attorney's investigator, which was obtained without a valid waiver of his *Miranda* rights and in violation of his constitutional rights was improperly admitted into evidence at Petitioner's jury trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

II.     Prosecutorial misconduct deprived Petitioner of a fair trial and created fundamental error, resulting in an excessive sentence in this case, in violation of the Fifth and Fourteenth Amendments.

III.     The trial court committed reversible error by failing to instruct the jury that Petitioner would be required to register as a sex offender as an additional punishment if he was convicted of either of these charges, in violation of the Fifth, Sixth, and Fourteenth Amendments.

IV.   The cumulative effect of the errors in Grounds I, II, and III deprived Petitioner of a fair trial, in violation of the Fifth and Fourteenth Amendments.

V.   Petitioner was denied Sixth Amendment effective assistance of appellate counsel on direct appeal.

VI.   Petitioner was denied Sixth Amendment effective assistance of trial counsel.

VII.   The verdict was against the weight of the evidence, that there was insufficient evidence for the State to sustain a conviction as set out in the State's Information page in violation of the Fifth and Fourteenth Amendments.

VIII.   The State introduced inadmissible evidence to the Jury, in violation of the Fifth and Fourteenth Amendments, after trial counsel advised appellate  counsel that this substantive ground was recommended by him for Petitioner's direct appeal, and appellate counsel ignored it.

Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review.  The following records have been submitted to the Court for consideration in this matter:

A.   Petitioner's direct appeal brief (Dkt. 14-1).

B.   The State's brief in Petitioner's direct appeal (Dkt. 14-2).

C.   Opinion affirming Petitioner's judgment and sentence. *Bingley v. State*, No. F-2013 (Okla. Crim. App. Dec. 19, 2014) (unpublished) (Dkt. 14-3).

D.   Petitioner's application for post-conviction relief, filed on December 15, 2015 (Dkt. 14-4).

E.   Order Denying Application for Post-Conviction Relief, filed in Case No. CF-2010-21 on July 18, 2016 (Dkt. 14-5).

F.     Petitioner's post-conviction appeal, filed in Case No. PC-2016-367 on September 13, 2018 (Dkt. 14-6).

G.     Order Affirming Denial of Application for Post-Conviction Relief, filed in Case No. PC-2016-367 on November 10, 2016 (Dkt. 14-7).

H.     Transcripts and Original Record (Dkt. 15).

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

The Oklahoma Court of Criminal Appeals made the following factual findings in Petitioner's direct appeal:

> Appellant sexually abused his stepdaughter, [P.S.]. He began having intercourse with her when she was eleven years old. He used the family video camera to record himself having sex with her. Appellant continued to abuse her several times a month until she reached fourteen years of age. Her mother discovered the video and took her to the local family advocacy center.

*Bingley v. State*, No. F-2013-203, slip op. at 1-2 (Okla. Crim. App. Dec. 19, 2014) (Dkt. 14-3). The OCCA's factual findings are entitled to a presumption of correctness, unless

Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

**Ground I:  Violation of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)**

Petitioner alleges in Ground I, as he did in Proposition One on direct appeal, that the trial court erred in admitting his statement to the district attorney's investigator, Travis Saulsberry, that "I guess I messed up."  Petitioner asserts the statement was made without a proper waiver, and he was goaded into making it.  He maintains the State failed to demonstrate that his statement to Saulsberry was knowing, voluntary, and intelligent, and he argues the statement should have been suppressed.  Petitioner further contends that because his entire conversation with Saulsberry was not recorded, the OCCA should mandate police recording of all statements made by defendants.  The OCCA denied relief on this claim in Petitioner's direct appeal:

> In his first proposition of error, Appellant contends that his statement to District Attorney's Investigator, Travis Saulsberry, should have been suppressed.  After Investigator Saulsberry arrested Appellant on January 9, 2010, he interviewed Appellant at the LeFlore County Sheriff's Department. Saulsberry video recorded the interview.  During the interview, Saulsberry listed the evidence and allegations against Appellant.  He explained that he was just providing Appellant with an opportunity to explain what had happened.  Appellant admitted: "I guess I messed up."

> Appellant filed a motion to suppress.  The District Court held a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), and determined that Appellant's statement was voluntary and admissible.

> "A confession is voluntary, and thus admissible in evidence, only when it is the product of an essentially free and unconstrained choice by its maker." *Young v. State*, 191 P.3d 601, 607 (Okla. Crim. App. 2008) (quotations and

citation omitted). "When the admissibility of a defendant's incriminating statement is challenged at trial, the State must establish voluntariness by a preponderance of the evidence." *Johnson v. State*, 272 P.3d 720, 727 (Okla. Crim. App. 2012). The inquiry has two aspects: (1) the relinquishment of the right must be voluntary in that it was a product of free, deliberate choice, rather than coercion, intimidation or deception; and (2) the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *Coddington v. State*, 142 P.3d 437, 447 (Okla. Crim. App. 2006) citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

The voluntariness of a confession is judged from the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. *Davis v. State*, 103 P.3d 70, 80 (Okla. Crim. App. 2004); *Van White v. State*, 990 P.2d 253, 267 (Okla. Crim. App. 1999); *Lewis v. State*, 970 P.2d 1158, 1170 (Okla. Crim. App. 1998). This necessarily includes the use of any physical punishment, repeated or prolonged questioning, deprivation of food or sleep, the presence of any promises or threats, and the psychological impact on the accused. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). "[T]he question in each case is whether the defendant's will was overborne at the time he confessed." *Lynumn*, 372 U.S. at 534; *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). On appeal, we consider whether the District Court's ruling "is supported by competent evidence of the voluntary nature of the statement." *Johnson*, 272 P.3d at 727; *Young*, 191 P.3d at 607; *Davis*, 103 P.3d at 80.

Appellant contends, as he did in the District Court, that his statement to Investigator Saulsberry was involuntary. He claims that Saulsberry questioned him for more than an hour, but that only 12 minutes and 30 seconds of the interview were recorded. Nothing in the record supports Appellant's claim that he was interrogated for any length of time before the recorded interview began. Saulsberry arrested Appellant at his home in Wister, Oklahoma. Prior to placing Appellant under arrest, Saulsberry spoke with Appellant and informed him that the victim had made some allegations. He then placed Appellant under arrest, drove him to the Sheriff's Department, and conducted the interview. A review of the video reveals that Saulsberry brought Appellant into the interview room, removed his handcuffs, explained the purpose of the interview, and advised Appellant concerning the *Miranda* rights with a rights waiver form. It is apparent from the conversation on the video that Saulsberry had not questioned Appellant concerning the offenses prior to

5

that point in time.

Appellant further claims that his statement should have been suppressed because he never signed the *Miranda* rights waiver form and never unequivocally agreed to speak to Saulsberry. However, an express statement of waiver, oral or otherwise, is not essential to effect a waiver of *Miranda* rights. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010); *Gilbert v. State*, 951 P.2d 98, 110 (Okla. Crim. App. 1997). "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id*. 560 U.S. at 385; *Gilbert*, 951 P.2d at 110.

We find that competent evidence supports the District Court's conclusion that Appellant's statement was voluntary and admissible. It is apparent from the video that Appellant fully understood his rights. Saulsberry read the rights waiver form to Appellant. He stopped after each right and asked Appellant if he understood that specific right. Appellant nodded and indicated that he understood each of the rights. Saulsberry also permitted Appellant to read the form to himself. When Saulsberry asked Appellant if he was willing to waive those rights and speak with him, Appellant sought clarification from Saulsberry concerning the meaning of "waive" his rights. Saulsberry explained that Appellant could give up the rights listed on the form and talk to him about the allegations if he desired. Appellant was satisfied with this explanation and stated that he wanted to speak with Saulsberry but did not want to hear what was going to be said about him. Saulsberry acknowledged Appellant's response and asked if Appellant wanted him to explain his rights, again. Appellant declined and stated that he was going back and forth.

Saulsberry repeatedly advised Appellant that he could end the interview at any time. Appellant did not refuse to speak to the officer or invoke his right to counsel. Instead, Appellant continued to speak with Saulsberry.

Saulsberry asked Appellant if he had any questions, and Appellant asked about the toilets in the jail cells. After Saulsberry answered Appellant's question, he informed Appellant: "You don't have to talk to me but I'll tell you what we got." Saulsberry listed the evidence that the officers had recovered, including the victim's partial account of the abuse and a video portraying Appellant engaged in intercourse with the victim. He also listed the

evidence that the officers intended to obtain, including DNA samples for analysis. Saulsberry reiterated that he was just providing Appellant with an opportunity to explain what had happened. Appellant stated: "I guess I messed up."

Twice, Appellant stated that he wanted to speak with Saulsberry only to later state that he didn't know what to do. Saulsberry permitted Appellant to leave the interview room to use the restroom. When Appellant returned, he invoked his right to counsel and Saulsberry ended the interview. As the record reveals that Appellant was fully aware of his rights, we find that his decision to continue to speak with Saulsberry was a deliberate choice to relinquish the rights afforded him.

Appellant further claims that his admission was the result of police misconduct. He asserts that Saulsberry goaded and harassed him into making the admission. Reviewing the totality of the circumstances, Appellant's will was not overborne. The entire interview lasted 12 minutes and 30 seconds. Although Saulsberry was persistent, he did not bombard, goad, or harass Appellant. Saulsberry remained respectful and non-confrontational throughout the interview. Appellant's admission was the product of an essentially free and unconstrained choice.

Finally, Appellant argues that this Court should require law enforcement officers to record all custodial interrogations as a matter of policy. He did not raise this challenge before the District Court. As such, we find that he has waived appellate review of this issue for all but plain error. *Soriano v. State*, 248 P.3d 381, 398-99 (Okla. Crim. App. 2011); *Young v. State*, 12 P.3d 20, 37 (Okla. Crim. App. 2000). ("Appellant's failure to object at trial on the grounds he now raises on appeal waives review for all but plain error."). We review his claim pursuant to the test set forth in *Hogan v. State*, 139 P.3d 907 (Okla. Crim. App. 2006).

> To be entitled to relief under the plain error doctrine, [an appellant] must prove: 1) the existence of an actual error (*i.e.*, deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. If these elements are met, this Court will correct plain error only if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of

justice.

*Id.*, 139 P.3d at 923 (quotations and citations omitted).

This Court has previously declined to fashion a rule requiring the recording of all custodial interrogations. *Soriano*, 248 P.3d at 399. As the record reflects that Saulsberry recorded Appellant's custodial interrogation in its entirety, we find that Appellant has not shown the existence of an actual error in the present case. Plain error did not occur. Proposition One is denied.

*Bingley*, No. F-2013-203, slip op. at 2-7 (footnote omitted) (Dkt. 14-3).[1]

Respondent alleges the OCCA's decision was not contrary to, or an unreasonable application of, Supreme Court law, and the decision was not an unreasonable determination of the facts in light of the evidence presented at trial.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that statements made by a defendant during custodial interrogation could not be used at trial unless the defendant first was advised of his right to remain silent, his right to an attorney, and that his statements may be used against him. *Id.* at 444. A defendant's voluntary, spontaneous statements made before or after a *Miranda* warning, however, are admissible. *Id.* at 478. *See Romano v. State*, 909 P.2d 92, 109 (Okla. Crim. App. 1995) (upholding admission of a spontaneous statement made prior to *Miranda* warnings); *Hall v. State*, 766 P.2d 1002, 1005 (Okla. Crim. App. 1988) (upholding the admission of a spontaneous statement made after *Miranda* warnings); *Williams v. State*, 733 P.2d 22, 23-24 (Okla. Crim. App. 1987)

---

[1] Parallel citations in the OCCA's opinions have been omitted throughout this Opinion and Order.

(upholding the admission of spontaneous statements made before and after *Miranda* warnings).

To determine whether a statement is spontaneous, it must be determined whether the statement was made in response to "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The functional equivalent of express questioning refers to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* at 301 (footnote omitted).

In *Schneckloth v. Bustamante*, 412 U.S. 218 (1973), the Supreme Court held that in determining the voluntariness of a defendant's custodial confession or statements, the totality of the circumstances of the interrogation must be considered. *Id.* at 226. Consistent with *Schneckloth*, when the issue of voluntariness arises on review, the OCCA looks to the totality of the surrounding circumstances, including the characteristics of the accused and the details of the particular interrogation. *Young v. State*, 670 P.2d 591, 594 (Okla. Crim. App. 1983). "[I]t is well established that the ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker." *Crawford v. State*, 840 P.2d 627, 635 (Okla. Crim. App. 1992), *abrogated on other grounds by Malone v. State*, 168 P.3d 185 (Okla. Crim. App. 2007) (citing *Malloy v. Hogan*, 378 U.S. 1, 7 (1964)). In *Davis v. State*, 103 P.3d 70 (Okla. Crim. App. 2004), the OCCA held:

> Voluntariness of a confession is judged from the totality of the circumstances, including the character of the accused and the details of the interrogation. For

> a waiver of rights to be effective, the State must show by a preponderance of
> the evidence that the waiver was the product of a free and deliberate choice
> rather than intimidation, coercion, or deception and that the waiver was made
> with a full awareness both of the nature of the right being abandoned and the
> consequences of the decision to abandon it.

*Id*. at 80-81 (citations omitted).

Regarding a request for counsel, a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). Police are not required to cease questioning or ask clarifying questions, if a suspect makes an equivocal or ambiguous statement concerning the right to counsel. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). Oklahoma adheres to this authority. *Cf. Mitchell v. State*, 884 P.2d 1186, 1193 (Okla. Crim. App. 1994), *aff'd in part and rev'd in part on other grounds by Mitchell v. Gibson*, 262 F.3d 1036 (10th Cir. 2001) (holding that a defendant's question, "Do I need an attorney?" was not a request for counsel, although it "could amount to a request for counsel--if the defendant is young, inexperienced or unfamiliar with the criminal justice system, of low intelligence, mentally disabled or ill, or overwhelmingly upset or overwrought").

Respondent asserts that in the State's brief on direct appeal, the video of Petitioner's police interview demonstrated that his complained-of statement was constitutionally admitted. Petitioner was 36 years old when he was arrested for this crime (O.R. 1). He does not claim, and the video demonstrates, he was not particularly young, inexperienced or

unfamiliar with the justice system, of low intelligence, mentally disabled or ill, or overwhelmingly upset or overwrought when Investigator Saulsberry read him his *Miranda* rights. To the contrary, Petitioner appeared calm, engaged, and clearly able to intelligently consider the situation and his rights. Investigator Saulsberry removed Petitioner's handcuffs and Petitioner sat down in the chair (State's Ex. 2, 00:20). Petitioner sat with his legs crossed and his hands folded in his lap (State's Ex. 2, 00:22-00:58). Investigator Saulsberry explained that this was Petitioner's chance to tell his side of the story and explained his rights (State's Ex. 2, 00:43, 1:10-1:33). As Investigator Saulsberry began reading each of the rights, Petitioner pulled his chair up to the desk and was paying close attention to the rights form and nodding, indicating that he understood the rights being read to him (State's Ex. 2, 1:10-2:02). After Investigator Saulsberry finished, Petitioner asked, "What do you mean by waiving my rights?" (State's Ex. 2, 2:02). Investigator Saulsberry explained that it means he would waive his rights and talk to him about the allegations and that at any time during their talk he could decide to stop (State's Ex. 2, 2:02-2:14). Petitioner sat there contemplating the rights waiver and then stated, "I want to then again I don't" (State's Ex. 2, 2:38-2:40). A few minutes later, Investigator Saulsberry again asked whether he wanted him to explain his rights again, and the defendant stated, "I'm going back and forth, back and forth" indicating that he was clearly contemplating the waiver (State's Ex. 2, 6:37-6:38). These statements indicate that Petitioner was intelligently considering the waiver and the consequences of it and did not indicate that he did not want to cooperate with law

enforcement. Nor were any of his statements an unambiguous invocation of his rights; therefore, Investigator Saulsberry was free to continue the interview. *See Davis*, 512 U.S. at 461 (only if the suspect states unambiguously that he wants an attorney must police interrogation cease).

Shortly after Petitioner's ambiguous statement, he then stated, "I don't even wanna hear what's gonna be said" (State's Ex. 2, 2:42-2:43). Petitioner then said, "Oh God, why me?" (State's Ex. 2, 2:56). Investigator Saulsberry asked if Petitioner had any questions and started packing up his folder and the rights form and told Petitioner he did not have to talk. The investigator explained the evidence they had against Petitioner, including the videotape and stated several times that Petitioner did not need to talk to him but that he was giving him the chance to tell his side of the story (State's Ex. 2, 3:11-5:02). Having heard all of this, Petitioner stated, "I guess I messed up." (State's Ex. 2, 5:11-5:12).

Prior to trial, Petitioner filed a generic Motion to Suppress wherein he vaguely claimed "the evidence the State seeks to introduce against him" was obtained in violation of his Constitutional rights (O.R. 55). The evidence was not named or described, and there is no further argument in the motion. There was no pre-trial ruling on the motion.

During the investigator's testimony, the trial court excused the jury and conducted a hearing on the voluntariness of Petitioner's statement pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964) (Tr. II 102-116). At the hearing, Petitioner asserted the same arguments that he asserted on direct appeal, but also added the claim that the OCCA should mandate the

recording of all statements by defendants. The trial court viewed Petitioner's recorded statement and heard argument of counsel. Using the preponderance of the evidence standard, the trial court found that Petitioner's statements to Investigator Saulsberry were voluntarily made and were admissible. The court further found that Petitioner's arguments addressed the weight to be given the evidence rather than its admissibility. *Id.* at 113-14.

After careful review, this Court finds the record supports the OCCA's determination that Petitioner's statement was voluntary and not the result of any police coercion or threat. Petitioner was in the interview room for less than seven and one-half minutes when he asked to use the restroom, and Investigator Sulsberry allowed him to do so (State's Ex. 2, 7:27). Saulsberry was cordial, non-confrontational, and respectful to Petitioner at all times, not goading or harassing. Saulsberry simply explained the evidence against Petitioner and never attempted to influence Petitioner, saying he did not want Petitioner to do anything he did not want to do (State's Ex. 2, 6:45). Petitioner was given, and indicated he understood, the *Miranda* rights, and he never was promised anything or coerced in any way to make a statement. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (holding that where petitioner received partial warnings prior to statement, "the questioning was of short duration, and petitioner was a mature individual of normal intelligence," the fact that police misrepresented statement of other witness did not render the suspect's statement inadmissible). *See also Gilbert v. State*, 951 P.2d 98, 111-12 (Okla. Crim. App. 1997) (citing *Castro v. State*, 745 P.2d 394, 403 (Okla. Crim. App. 1987)) ("Mere advice or exhortations by the police that it

would be better for the accused to tell the truth, unaccompanied by either a threat or a promise, does not render a subsequent confession involuntary.").

Based upon the record, the OCCA made several findings: that Investigator Saulsberry did not question Petitioner before the recorded interview began; that Petitioner affirmatively indicated he understood his *Miranda* rights; that Petitioner was satisfied with the investigator's explanation of the term "waiver" with regard to his *Miranda* rights and expressly agreed to speak with Investigator Saulsberry; that Petitioner did not refuse to speak with the investigator or invoke his right to counsel; that Petitioner stated to the investigator, "I guess I messed up"; that Investigator Saulsberry did not "bombard, goad, or harass [Petitioner]"; and that "[Petitioner's] admission was the product of an essentially free and unconstrained choice." *Bingley*, No. F-2013-203, slip op. at 4-6.

The OCCA found Petitioner's statement was not the result of police coercion, but was voluntarily made after being fully advised of his Fifth Amendment rights. These factual findings are presumed correct, because Petitioner has not rebutted the findings with clear and convincing evidence. *See Willingham v. Mullin*, 296 F.3d 917, 922 (10th Cir. 2002) (stating "AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence") (citing 28 U.S.C. § 2254(e)(1)). Therefore, the OCCA's determination that no Fifth Amendment violation occurred is not contrary to or an unreasonable application of federal law, nor is its decision an unreasonable application of the facts to the law. This claim

for habeas corpus relief fails.

Regarding Petitioner's claim that his due process rights were violated because part of his conversation with Inspector Saulsberry was not recorded, this claim is meritless and must be denied. The OCCA found "Saulsberry recorded [Petitioner's] custodial interrogation in its entirety," *Bingley*, No. at 7, and Petitioner has failed to rebut the presumption of correctness by clear and convincing evidence.

As stated by the OCCA on direct appeal, there is no rule in Oklahoma that custodial interviews must be recorded. *Id*. Furthermore, there is no federal law mandating the recording of police interrogations. *See United States v. Williamson*, No. 13-20011-01-SJM, 2014 WL 2533177, at *5 (D. Kan. June 5, 2014) (unpublished) (noting that there is no federal statute or rule requiring a police custodial interrogation to be electronically recorded). Thus, the OCCA's decision that recording is not required for custodial interrogations cannot be contrary to, or an unreasonable application of, federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established federal law.") (internal citations and quotations omitted)). This claim for habeas relief fails.

**Ground II: Prosecutorial Misconduct**

Petitioner alleges in Ground II of the petition that prosecutorial misconduct during *voir dire* and the closing argument deprived him of a fair trial. The OCCA denied relief on this claim in Petitioner's direct appeal:

In his second proposition of error, Appellant contends that prosecutorial misconduct during *voir dire* and in closing argument rendered his trial fundamentally unfair. As Appellant failed to raise a timely challenge to the comments he now claims were improper, he has waived appellate review of his claim for all but plain error review. *Malone v. State*, 293 P.3d 198, 211 (Okla. Crim. App. 2013). We review claims of prosecutorial misconduct for plain error under the test set forth in *Hogan*. *Id.*, 293 P.3d at 211-12. We first determine whether the prosecutor's actions constitute an actual error. *Id.*, 293 P.3d at 212.

Appellant claims that during closing argument, the prosecutor improperly sought sympathy for the victim and asked the jurors to place themselves in the victim's position. Regarding closing argument, both parties have wide latitude to argue the evidence and inferences from it and we will find error only where a grossly unwarranted argument affects a defendant's rights. *Coddington v. State*, 254 P.3d 684, 712 (Okla. Crim. App. 2011). As the challenged comments were based on the evidence at trial and addressed the central claim of Appellant's defense, we find that Appellant has not shown the existence of an actual error. *Taylor v. State*, 248 P.3d 362, 379 (Okla. Crim App. 2011); *Browning v. State*, 134 P.3d 816, 839 (Okla. Crim. App. 2006).

Appellant claims that the prosecutor's questioning in *voir dire* impermissibly shifted the burden of proof. The purpose of *voir dire* is to determine whether there are grounds to challenge prospective jurors for either actual or implied bias and to facilitate the intelligent exercise of peremptory challenges. *Mitchell v. State*, 235 P.3d 640, 646 (Okla. Crim. App. 2010). Although unartful, the prosecutor's reference to "the time this crime occurred" did not shift the burden of proof but helped both parties determine possible juror bias.

Appellant further claims that the prosecutor attempted to define "reasonable doubt" during *voir dire*. This term is self-explanatory and this Court disapproves of any party defining it. *Cuesta-Rodriguez v. State*, 241 P.3d 214, 234 (Okla. Crim. App. 2010); *Harris v. State*, 84 P.3d 731, 751-52 (Okla. Crim. App. 2004). In the present case, the prosecutor did not define "reasonable doubt" but properly attempted to dispel commonly held attitudes concerning the standard by commenting that it did not mean "beyond all doubt" or "beyond every doubt." *Taylor*, 248 P.3d at 377 (Okla. Crim. App. 2011). As there was no prosecutorial misconduct, we find that Appellant has not shown the existence of an actual error. Plain error did not occur.

Proposition Two is denied.

*Bingley*, No. F-2013-203, slip op. at 7-9) (footnote omitted) (Dkt. 14-3).

> In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006). Further, to obtain relief on a prosecutorial misconduct claim, a habeas petitioner must show the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Petitioner makes the same arguments in his petition as were made on direct appeal. He complains the prosecutor improperly evoked sympathy for the victim by stating the following:

> Can you imagine the relief she must have felt the day of January 9th, 2010, when her mother came and said, I have seen this video. . . . The years of having to keep this secret because he told her something bad would happen if you don't.

> And what does a child think about something bad happening? I live in his house. He is my father, by all functional means. I've been with him since I was two. He's my dad. When my dad tells me to do something, I do something. And if my dad tells me something bad is going to happen, I believe him. And so did she.

(Tr. III 49-50).

The record shows Petitioner's counsel asked P.S. whether she ever told any of her friends or her mother, with whom she had a close relationship, about sex with Petitioner. *Id.* at 13. He also asked whether she had yelled or made any noise while Petitioner had sex with her, implying this would have alerted her brothers or her mother. *Id*. at 14. P.S. testified that Petitioner said that if she told anyone about the abuse "something bad would happen." *Id.* at 8. P.S. understood this to mean that if she told anyone, Petitioner "would try to hurt her mother and her brothers." *Id.*

Rather than an appeal to sympathy, the prosecutor's statements addressed the central claim of Petitioner's defense: that he did not commit the crimes, and P.S. had no credibility because she never told anyone of Petitioner's abuse. As such, the argument was proper. *See Matthews v. Workman,* 577 F.3d 1175, 1189 (10th Cir. 2009) (holding generally that no misconduct occurs when a prosecutor responds to evidence elicited by the defendant in support of his defense); *Taylor v. State*, 248 P.3d 362, 379 (Okla. Crim. App. 2011) (holding that prosecutor's statements including, "I would submit to you that when you're in that position, talking about who did it, or talking about the names of people, is not as important as living," was not an appeal to sympathy, but rather properly addressed the central claim of

the defendant's defense which focused on the victim's prior inconsistent statements regarding the identity of the shooter).

Petitioner next complains that the prosecutor argued: Petitioner "betrayed [her trust] for his own sexual pleasure." *Id*. at 54. Petitioner had known P.S. since she was two years old, and when he married P.S.'s mother, he became her stepfather (Tr. II 51, 52; Tr. III 4). Petitioner threatened P.S. so she would not tell anyone of his abuse of her (Tr. III 8). Petitioner's taking advantage of his authority over P.S. and using it to sexually abuse her undeniably demonstrated the betrayal of trust of a parent figure over a child. The prosecutor merely explained how Petitioner was able to commit the crime, why he did it, and why P.S. could not reveal the abuse, addressing the evidence and the proffered defense. This was a fair comment on the evidence and was not improper. *See Thornburg*, 422 F.3d at 1113, 1131 (10th Cir. 2005) ("A prosecutor may comment on and draw reasonable inferences from evidence presented at trial."); *Le v. State*, 947 P.2d 535, 554 (Okla. Crim. App. 1997) (where crime was result of broken friendship and prosecutor emphasized ways the defendant betrayed the victim's trust in him, there was no error in the prosecutor's argument to jury that arguably explained the defendant's motive for committing the crime).

Furthermore, the prosecutor's asking the jury to imagine what P.S. went through each night as a 13, 14, and 15-year-old girl who did not know if Petitioner was going to come in her bedroom, and her having to put a pillow over her head while he had sex with her (Tr. III 53) also were fair comments on the evidence. When the circumstances of the crime become

known to the jury through the presentation of evidence, the prosecutor may properly comment upon those circumstances. *See Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002). The OCCA has upheld similar arguments which describe a victim's experience and are based on the evidence. *See Browning v. State*, 134 P.3d 816, 839 (Okla. Crim. App. 2006) (prosecutor's statements asking jurors to imagine themselves as a victim as each incident occurred was not misconduct); *Malicoat v. State*, 992 P.2d 383, 401 (Okla. Crim. App. 2000) (prosecutor's occasional speculation as to the victim's thoughts and feelings was based on the testimony from medical examiner and other witnesses and was not improper); *Hooper v. State*, 947 P.2d 1090, 1110 (Okla. Crim. App. 1997) (prosecutor's statement that victim was immersed in child's worst nightmare and to imagine what she went through was based on evidence presented and on State's theory and was not improper).

Likewise, the prosecutor's statements regarding the physical injury and the emotional injury suffered by P.S. as a result of Petitioner's abuse were based on the evidence and were in response to Petitioner's own elicited evidence. With regard to the physical injuries, Carol Weddle, who performed the SANE exam, testified that P.S. had physical signs of erythema (redness) and erosion the size of a pencil eraser on her vagina (Tr. II 180-81). Petitioner expressly elicited testimony regarding the emotional injury of P.S. On cross-examination, Petitioner was the one who asked P.S. if she was in counseling and where she was going to counseling (Tr. III 10). The prosecutor was merely commenting on the evidence of physical injury and responding to the defense evidence that P.S. was in counseling for her emotional

injuries.  As such, this was well within the wide latitude for making argument and inferences from the evidence.  *See Matthews,* 577 F.3d at 1189 (holding generally that no misconduct occurs when a prosecutor responds to evidence elicited by the defendant in support of his defense). ; *See also Taylor*, 248 P.3d at 379.

Petitioner also complains that the prosecutor elicited sympathy by stating:

> *The facts of the case are that* this man raped that child, over, and over, and over in her own home.  A home she could not leave. A home she could not escape from.  A home she had to stay in, because what else is she going to do?  If I tell, he is going to hurt my family.  That's what she thinks.

(Tr. III 73) (emphasis added).

Petitioner excludes the italicized portion of the prosecutor's remarks in his claim, however, that portion gives the context for the prosecutor's argument.  The prosecutor was laying out the facts for the jury.  Petitioner had been having sex with P.S. for three years.  It started when she was 11 years old and it only happened in their home, in her bedroom, in the middle of the night.  *Id.* at 5, 8, 9, 18.  Each time, P.S. put a pillow over her face so she would not have to see what Petitioner was doing to her, *i.e.*, putting his penis in her vagina.  *Id*. at 5, 7, 9).  Petitioner also threatened her that if she told anyone about the sex, something bad would happen, and she understood that to mean he would hurt her mother or her brothers. *Id.* at 8.  The prosecutor's statements were merely a recitation of the facts based on the evidence and not an improper request for sympathy.  There is no merit to this claim.  *See Duvall*, 139 F.3d at 795 ("The prosecutor is allowed a reasonable amount of latitude in drawing inferences from the evidence during closing summation") (citation omitted);

*Matthews v. State*, 45 P.3d 907, 920 (Okla. Crim. App. 2002) ("The instances cited, when read in the context of the entire closing argument, cannot truly be labeled 'prosecutorial misconduct.'").

Petitioner next complains that the prosecutor improperly questioned the jurors during *voir dire* when she asked the jurors, "At the time this crime occurred, approximately three years ago, were you aware of it at that time?" (Tr. I 53). The statement must be viewed in context of the entire *voir dire*.

The trial court already had read the crimes with which Petitioner was charged (Tr. I 14-15). When the trial court asked the prospective jurors whether anyone knew Petitioner, Prospective Juror Mason responded that he knew Petitioner, P.S., and Petitioner's father. *Id.* at 26. He further said, "I don't need to be sitting here." *Id*. After more questioning about whether he could lay aside his personal relationship with Petitioner and the victim and follow the law, Mason responded, "I guess" and later, "Yes." *Id*. at 27-28.

The prosecutor attempted to follow up on Prospective Juror Mason's somewhat ambiguous response to the trial court by asking whether he had knowledge of the crime. *Id*. at 53. Mason's comment that "I don't need to be sitting here" was an ambiguous comment that required further questioning as to his qualifications to serve as a juror. Not knowing the basis of Mason's knowledge or the extent of it, the prosecutor warned him to listen to her question carefully and not to give any more information than was asked for. *Id*. The prosecutor carefully worded her question asking Mason if he knew of the *crime* at the time

it occurred approximately three years ago. *Id.* (emphasis added). Because Mason clearly knew and had other information about Petitioner and the victim, the question was focused, so he knew the prosecutor was only seeking information about *the crime charged in this case* and was not seeking any more information that possibly could taint the jury.

State trial courts have broad discretion in determining the qualifications of jurors and the exercise of that discretion will not be overturned absent manifest error. *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991). *Voir dire* is designed to give parties the opportunity to explore the personal knowledge and opinions of jurors with the purpose of ensuring a defendant's right to a fair trial. *Romano v. State*, 847 P.2d 368, 375 (Okla. Crim. App. 1993). "[E]xposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged [does not] alone presumptively deprive the defendant of due process." *Murphy v. Florida*, 421 U.S. 794, 799 (1995) (emphasis added). By calling it a crime, the prosecutor did not improperly shift the burden of proof. The district court had already informed the panel that Petitioner was charged with a crime as part of the initial instructions; therefore, the jury already knew the State was alleging a crime had occurred. Furthermore, the prosecutor was merely attempting to direct the prospective juror's focus to the crime itself and not other acts of Petitioner of which the prospective juror might be aware, so the prospective juror would not taint the rest of the jury. The jury was instructed repeatedly on the presumption of innocence and that it must find Petitioner guilty beyond a reasonable doubt (O.R. 162-63, 177, 188, 191, 199, 203, 205-06). *See Dodd v. Trammell*,

753 F.3d 971, 990-91 (10th Cir. 2013) (petitioner alleged the prosecutor attempted "to psychologically condition" jurors into applying a lesser burden of proof; on habeas review, the Court upheld the OCCA's decision that no error occurred, finding the jury was instructed on the burden of proof and the presumption of innocence). Considering the context of the entire *voir dire*, the OCCA's denial of this claim was not contrary to, or an unreasonable application of, federal law. *Id.*

Finally, Petitioner claims the prosecutor improperly attempted to define reasonable doubt to the jury by stating:

> . . . I can't tell you what that means, but I can tell you what it doesn't mean. It doesn't mean beyond all doubt. It doesn't mean beyond every doubt. It means beyond a reasonable doubt.

(Tr. I 93).

Petitioner's allegation implicates a specific constitutional right. *Dodd*, 753 F.3d at 990-91. Thus, on habeas review, the analysis is whether the OCCA's decision denying relief on this claim was contrary to, or an unreasonable application of, federal law, and Petitioner need not prove his entire trial was rendered fundamentally unfair by the prosecutor's statements. *Id.*. The Tenth Circuit holds that telling prospective jurors what "beyond a reasonable doubt" does not mean does not equate to a constitutional violation. *Thornburg*, 422 F.3d at 1130. The OCCA holds similarly, *i.e.*, no error occurs when a prosecutor remarks that beyond a reasonable doubt does not mean beyond all doubt. *Jackson v. State*, 964 P.2d 875, 885 (Okla. Crim. App. 1998). *See also Thomason v. State*, 763 P.2d 1183,

1183 (Okla. Crim. App. 1988). Therefore, Petitioner's claim is without merit.

After careful review, the Court finds Petitioner has failed to show the prosecutor's statements rendered his trial fundamentally unfair. Ground II of the petition is denied.

## Ground III: Jury Instruction on Sex Offender Registration

Petitioner next alleges the trial court erred in failing to instruct the jury that he would be required to register as a sex offender as an additional punishment upon conviction of Count 1 or Count 2. He presented this claim to the OCCA on direct appeal, and the OCCA denied the claim as follows:

> In his third proposition of error, Appellant argues that the District Court should have *sua sponte* instructed the jury that he would have to register as a sex offender if he were convicted. Appellant's failure to request such an instruction at trial waived appellate review of the issue for all but plain error. *Taylor*, 248 P.3d at 368-69. We review Appellant's claim pursuant to the test set forth in *Hogan* and first determine whether Appellant has shown the existence of an actual error. *Levering v. State*, 315 P.3d 392, 397 (Okla. Crim. App. 2013); *Hogan*, 139 P.3d at 923.

> Individuals who become subject to the provisions of the Sex Offenders Registration Act, Okla. Stat. tit. 57, §§ 581 - 590.2, must register with both the Oklahoma Department of Corrections and the local law enforcement authority. Okla. Stat. tit. 57, § 583(A). Before a person, who will be subject to the provisions of the Sex Offenders Registration Act, is due to be released from a correctional institution, the Departments [sic] of Corrections is required to assign the person a numeric risk level based on the level of risk the person poses to the community. Okla. Stat. tit. 57, § 582.1. An individual subject to the provisions of the Act has a continuing duty to register for periods ranging from fifteen (15) years from the date of completion of his or her sentence up to life, based upon the assigned risk level. Okla. Stat. tit. 57, § 583(C), (D). The Act also places restrictions on employment and residency. Okla. Stat. tit. 57, §§ 589, 590, 590.1.

> Relying upon the Oklahoma Supreme Court's opinion in *Starkey v.*

*Okla. Dep't of Corr.*, 305 P.3d 1004 (Okla. Crim. App. 2013), Appellant argues that registration as a sex offender is an integral part of the punishment for a sex offense. In *Starkey*, the Oklahoma Supreme Court determined whether the Department of Corrections had violated the prohibition against *Ex Post Facto* laws when it retroactively applied the 2007 and subsequent amendments to the Sex Offenders Registration Act to a Texas sex offender who had resided in Oklahoma since 1998. *Id.*, 305 P.3d at 1009-10, 1013. *Starkey* recognized that the Legislature intended the Sex Offenders Registration Act to be a civil regulatory scheme, but that its punitive effect was excessive in relation to its non-punitive public safety purpose and therefore found that retroactive application of the amendments violated the *Ex Post Facto* clause of the Oklahoma Constitution. *Id.*, 305 P.3d at 1020, 1030-31. As Appellant has not claimed that any aspect of the Sex Offenders Registration Act has been retroactively applied to him, we find that *Starkey* is neither controlling nor persuasive in the present case.

We further note that *Starkey* did not address the question presented in this case, *i.e.*, whether it is necessary for the sentencing jury to be informed about the registration requirements of the Sex Offenders Registration Act. Our case law on the District Court's duty to instruct the jury is clear. The District Court is to instruct the jury on the salient features of the law, including the applicable range of punishment the jurors may consider under the law and facts of the case. *Hogan*, 139 P.3d at 923; *Hicks v. State*, 70 P.3d 882, 883 (Okla. Crim. App. 2003); *Simpson v. State*, 827 P.2d 171, 174 (Okla. Crim. App. 1992).

Reviewing the plain language of our statutes, we find that the requirements of the Sex Offenders Registration Act are not part of the applicable range of punishment for Appellant's offenses. The Legislature has set out the range of punishment for the offense of Child Sexual Abuse at Okla. Stat. tit. 21, § 843.5 (Supp. 2009) and the offense of Possession of Child Pornography at Okla. Stat. tit. 21, § 1021.2 (Supp. 2007). Neither statute permits a judge or a jury to impose, delay, alter, or suspend registration as a sex offender. Nothing in the Sex Offenders Registration Act authorizes a sentencing judge or jury to require or preclude compliance with the Act. Okla. Stat. tit. 57, §§ 581 - 590.2 (2011). Instead, the Sex Offenders Registration Act is a wholly separate regulatory scheme. Okla. Stat. tit. 57, § 581 (2011). Because the Legislature has not provided for the jury to assess registration as a punishment, it is not part of the applicable punishment range. *Cf. Harney v, State*, 256 P.3d 1002, 1007 (Okla. Crim. App. 2011); *Hicks*, 70 P.3d at 883.

We further find that the Sex Offenders Registration Act was not a salient feature of the law concerning Appellant's case. In *Anderson v. State*, 130 P.3d 273 (Okla. Crim. App. 2006), this Court determined that jurors should be instructed upon the effect of the 85% rule and reasoned that, with this information jurors could more accurately gauge their intended sentences and avoid the uncertainty as to the length of time a defendant will actually serve. *Id.*, 130 P.3d at 279, 282. In *Verduzco v. State*, 217 P.3d 625 (Okla. Crim. App. 2009), this Court explained that the 85% rule is a sentencing consequence which has a calculable effect on the term of imprisonment to be imposed. *Id.*, 217 P.3d at 628.

Registration pursuant to the Sex Offenders Registration Act has no bearing on the issue of guilt or the accuracy of any intended sentence or fine. To the contrary, informing the jury about the registration requirement could lead to confusion that such registration is the equivalent to community supervision and that, upon the defendant's release, the burden is on the State to ensure compliance with registration by way of supervision when, in reality, the burden is on the felon, who may or may not comply. As registration pursuant to the Act does not have a calculable effect on the term of imprisonment to be imposed, it is not a salient feature of the law in sex crimes cases.

Criminal conviction has long resulted in attendant consequences that adversely affect the convicted felon. A "felon" cannot vote during his prescribed sentence (Okla. Const., Art. III , § 1; Okla. Stat. tit. 26, § 4-101 (2011)); sit on a jury (Okla. Stat. tit. 38, § 28 (2013)); run for public office within 15 years of completing his or her sentence (Okla. Stat. tit. 26, § 5-105a (2011)); continue or obtain State or County office or employment (Okla. Stat. tit. 51, § 24.1 (2011)); bear arms (Okla. Stat. tit. 21, § 1283 (2012)), and if convicted of certain crimes, retain a driver's license (Okla. Stat, tit. 47, § 6-205 (2013)). Accordingly, we find that the District Court is not obligated to instruct jurors about the registration requirements of the Sex Offenders Registration Act.

As Appellant has not shown the existence of an actual error, we need not discuss the second and third steps of plain error review. *Malone*, 293 P.3d 215 (Okla. Crim. 2013). Plain error did not occur. Proposition Three is denied.

*Bingley*, No. F-2013-203, slip op. at 9-13) (footnote omitted).

Because this issue is a matter of state law, Respondent asserts this Court should decline to entertain the claim. Pursuant to Section 2254(a), the power of a federal habeas corpus court is expressly limited to violations of federal law; questions of state law are not cognizable issues. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).

> "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981), *cert. denied*, 525 U.S. 852 (1998)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."), *cert. denied*, 514 U.S. 1115 (1995). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

*Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999).

The record shows Petitioner failed to request a jury instruction on sex offender registration or object to the lack of an instruction on this issue. Therefore, the OCCA reviewed the claim for plain error only. To establish plain error occurred, the defendant "must prove: 1) the existence of an actual error (*i.e.*, deviation from a legal rule); 2) that the

28

error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding." *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006) (citation omitted). When the OCCA adjudicates a claim pursuant to its plain error review, it has addressed any due process argument regarding that claim, because the OCCA's plain error test is the same one utilized by the Tenth Circuit in determining a due process violation. *Thornburg*, 422 F.3d at 1124-25. The OCCA holds generally that jury instructions are committed to the discretion of the trial court and its judgment will not be disturbed as long as "the instructions as a whole, accurately state the applicable law." *Harney v. State*, 256 P.3d 1002, 1005 (Okla. Crim. App. 2011).

The Oklahoma Sex Offenders Registration Act (the "Act") recognizes that "sex offenders who commit . . . predatory acts against children . . . pose a high risk of re-offending after release from custody." Okla. Stat. tit. 57, § 581(B). Consequently, the purpose of the Act is to "permit law enforcement officials to identify and alert the public when necessary for protecting public safety." *Id*. The Act applies to those convicted of sex offenses against children. Okla. Stat. tit. 57, § 582(A). The Act requires that before a person who is subject to the Act is released from a correctional institution, the Department of Corrections "shall determine the level of risk to the community . . . and assign to the person a numeric risk level of one, two, or three." Okla. Stat. tit. 57, § 582.1. Registration with the local law enforcement authority having jurisdiction where the person resides or intends to reside is required within three days after entering that jurisdiction. Okla. Stat. tit 57, § Okla. Stat. tit

57, §§ 583(A)(2).

The OCCA found in Petitioner's direct appeal that the trial court had no obligation to instruct the jury about sex offender registration. *Bingley*, No. F-2013-203, slip op. at 9-13. The OCCA has since determined in a published decision that registration as a sex offender "is not a material consequence of sentencing and is a collateral matter outside the jury's purview." *Reed v. State*, 373 P.3d 118, 123 (Okla. Crim. App. 2016). Therefore, trial courts have no duty to instruct juries regarding sex offender registration. *Id.* Further, there is no Supreme Court precedent which requires a jury instruction on sex offender registration. *See Alexander v. Wilkerson*, No. CIV-15-580-HE, 2015 WL10372329, at *10 (10th Cir. Oct. 27, 2015) (unpublished) (finding that because there is no Supreme Court precedent requiring a jury instruction on the obligation to register as sex offender; the petitioner's claim could not succeed on habeas review). Accordingly, the OCCA's decision regarding this claim cannot be contrary to, or an unreasonable application of, federal law. *See House v. Hatch*, 527 F.3d 1010, 1017 (10th Cir. 2008) (where there is no clearly established federal law on point regarding an issue raised on habeas review, the state court's decision regarding the issue cannot be contrary to, or an unreasonable application of, federal law). Ground III of the petition is denied.

**Ground IV: Cumulative Error**

In Ground IV, Petitioner alleges the cumulative effect of the errors deprived him of a fair trial. On direct appeal, the OCCA denied relief on this claim as follows:

In his fourth proposition of error, Appellant claims that the cumulative effect of the errors occurring at trial deprived him of a fair trial. When there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial. *Williams v. State*, 22 P.3d 702, 732 (Okla. Crim. App. 2001); *Bechtel v. State*, 738 P.2d 559, 561 (Okla. Crim. App. 1987). However, a cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by the appellant. *Ashinsky v. State*, 780 P.2d 201, 209 (Okla. Crim. App. 1989). We have not identified any error in the present case. Therefore, no new trial or modification of sentence is warranted. Proposition Four is denied.

*Bingley*, No. F-2013-203, slip op at 13-14.

"[T]he Supreme Court has never recognized the concept of cumulative error" *Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019). Nonetheless, "[c]umulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.), *cert. denied*, 522 U.S. 844 (1997) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated.").

Here, the OCCA and this Court found no errors in Grounds I, II, or III of the petition. The Court, therefore, concludes Petitioner cannot establish there was cumulative error, or that the OCCA's decision was contrary to Supreme Court law. He, therefore, is not entitled to habeas relief on this claim.

**Ground V:  Ineffective Assistance of Appellate Counsel**

In Ground V, Petitioner raises three claims of ineffective assistance of appellate counsel on direct appeal:  (A) ineffectiveness in failing to raise a claim that the trial court erred in failing to suppress the evidence of the DVD supporting the child pornography charge; (B) ineffectiveness in failing to challenge the sufficiency of the evidence to support a conviction for child pornography; and (C) ineffectiveness in failing to challenge the trial court's denial of his motion to sever the two counts (O.R.72-73; Dkt. 15-8 at 76-77).  The OCCA set forth the test for claims of ineffective assistance of appellate counsel:

> Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction as it is usually the petitioner's first opportunity to allege and argue the issue.  As set forth in *Logan v. State*, 293 P.3d 969, 97 (Okla. Crim. App. 2013), post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Smith v. Robbins*, 528 U.S. 259, 289 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel.").  Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 687-89.  And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).

*Bingley*, No. PC-2016-367, slip op. at 3-4.

The record shows that Claim V(A) was raised in Petitioner's post-conviction application, however, Grounds V(B) and V(C) were not raised until his post-conviction

appeal. The OCCA thus found V(B) and V(C) were procedurally barred as follows:

> We find no merit in the claim that Petitioner was denied effective assistance of appellate counsel as alleged in his post-conviction application. The Post-Conviction Procedure Act is not a substitute for a direct appeal, nor is it intended as a means of providing a petitioner with a second direct appeal. *Fowler*, 896 P.2d at 569 (Okla. Crim. App. 1995); *Maines v. State*, 597 P.2d 774, 775-776 (Okla. Crim. App. 1979). This Court will not address issues and arguments raised for the first time in a post-conviction appeal to this Court. In post-conviction appeals to this Court, the review is limited to the record, the issues raised in the District Court and the findings of facts and conclusions of law made by the District Court. Rule 5.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015).[2]

*Bingley v. State*, No. PC-2016-367, slip op. at 4-5 (Okla. Crim. App. Nov. 10, 2016) (Dkt. 14-7).

The OCCA clearly based its decision on a procedural bar of Grounds V(B) and V(C). This state court finding of procedural default is independent, as it is separate and distinct from federal law. *See Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995). Under federal law, in order to apply a procedural bar, the bar must be evenhandedly applied or consistently applied by the state court. Oklahoma's refusal to consider an issue or evidence on post-conviction appeal because neither was presented to the trial court is firmly rooted and evenhandedly applied by the state court. *See Brown v. State*, 933 P.2d 316, 325 (Okla. Crim. App. 1997) (holding that where an issue is not presented to the trial court in a post-conviction application, the issue is waived on post-conviction appeal, and issues not presented to the

---

[2] Rule 5.2(A) states in pertinent part: "The appeal to this Court under the Post-Conviction Procedure Act constitutes an appeal from the issues raised, the record, and findings of fact and conclusions of law made in the District Court in non-capital cases. *See Yingst v. State*, 480 P.2d 276, 277 (Okla. Crim. App. 1971)."

trial court in a post-conviction application are not cognizable on post-conviction appeal).

The Tenth Circuit has not addressed whether Rule 5.2(A) is adequate to preclude habeas review.  It has, however, concluded that a similar rule, Rule 5.2(C), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015), is adequate to preclude habeas review.  *See Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998); *Johnson v. Champion*, 288 F.3d 1215, 1227, n.3 (10th Cir. 2002) (holding bar pursuant to Rule 5.2(C) is adequate).

The district courts for both the Northern and Western Districts of Oklahoma recognize the adequacy of the OCCA's procedural bar based upon its Rule 5.2(A).  *See Kincaid v. Bear*, No. CIV-14-736-F, 2016 WL 6892926, at *21-*22 (W.D. Okla. Sept. 14, 2016 (unpublished) (finding the OCCA's bar pursuant to Rule 5.2(A) adequate to preclude habeas review); *Brown v. Allbaugh*, No. 14-CV-0142-GKF-PJC, 2016 WL 4411410, at *5 (N.D. Okla. Aug. 18, 2016) (unpublished) (same).

In another Western District case, *Hyatt v. Rudek*, No. CIV-10-1396-F, 2011 WL 3348225, at *3 (W.D. Okla. June 28, 2011) (unpublished), the petitioner raised a habeas claim which he initially presented to the OCCA in his post-conviction appeal, instead of raising it in his post-conviction application in the trial court.  The OCCA held the claim was procedurally barred pursuant to Rule 5.2(A), because it was not presented to the trial court in the petitioner's post-conviction application.  On habeas review, the Magistrate Judge found that Rule 5.2(A) was similar to Rule 5.2(C) and held that the OCCA's bar of

Petitioner's claim based upon its application of Rule 5.2(A) was independent and adequate and that the claim was procedurally barred from habeas review. The District Judge adopted and affirmed the Magistrate Judge's Report, 2011 WL 3419502 (Aug. 3, 2011), and the Tenth Circuit affirmed the District Court's finding that the claim was procedurally barred, holding Rule 5.2(C) precluded the OCCA's consideration of the claim because it initially was raised in the petitioner's post-conviction appeal and not in his post-conviction application. *Hyatt v. Rudek*, No. 12-6216, 511 F. App'x 723, 726 (10th Cir. Feb. 15, 2013).

In *Boomershine v. Oklahoma*, No.04-CV-0170-CVE-PJC, 2007 WL 1235464, at **7-8 (N.D. Okla. April 26, 2007) (unpublished), *aff'd*, 251 F. App'x 544, 545 (10th Cir. 2007), the petitioner raised an appellate counsel ineffectiveness claim for the first time in his appeal of the denial of his post-conviction application, rather than in the application itself. The OCCA held the claim was procedurally barred pursuant to Rule 5.2(A), because the petitioner failed to present it to the trial court in his post-conviction application, and instead raised it initially in his post-conviction appeal. On habeas review, the Northern District found the OCCA's procedural bar was independent and adequate and held the habeas claim was procedurally barred.

In light of the above, this Court finds the state court's reliance on its procedural default rule in refusing to review Petitioner's claims on post-conviction appeal is an independent and adequate state ground for its decision. A petitioner who raises an issue that was defaulted in the state court ordinarily must show cause and prejudice for the default in

federal court, where the state court has refused to review the merits of the issue on the basis of its established procedural rules.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991)

"'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753 (emphasis in original). With respect to the "prejudice" prong of the "cause and prejudice" requirement, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Petitioner claims that ineffective assistance of appellate counsel was the cause for his failure to comply with the OCCA's rules concerning post-conviction appeals. Petitioner, however, was not represented by counsel in his post-conviction proceedings, therefore, he has only himself to blame for his failure to follow the OCCA's procedural rules. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (holding where there is no constitutional right to counsel there can be no deprivation of effective assistance). Even if Petitioner had been represented by counsel, this could not constitute "cause" for a procedural default. *See*

36

*Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997) ("Ineffective assistance of counsel in the post-conviction proceedings does not constitute cause under federal law."). Petitioner alleges no interference from officials which made compliance with the State's procedural rules impractical. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Because Petitioner has failed to show cause, the issue of prejudice need not be addressed. *See Steele v. Young*, 11 F.3d 1518, 1522 n.7. (10th Cir. 1993).

The Court further finds Petitioner has failed to demonstrate that application of the procedural bar will result in a fundamental miscarriage of justice. The Tenth Circuit Court of Appeals has held that "[c]ases involving a fundamental miscarriage of justice 'are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Gilbert v. Scott*, 941 F.2d 1065, 1068 n.2 (10th Cir. 1991) (citing *McClesky v. Zant*, 499 U.S. 467, 494 (1991)). The Tenth Circuit has explained this "very narrow exception" as follows:

> [T]he petitioner must supplement his habeas claim with a colorable showing of factual innocence. Such a showing does not in itself entitle the petitioner to relief but instead serves as a "gateway" that then entitles the petitioner to consideration of the merits of his claims. In this context, factual innocence means that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*Demarest v. Price*, 130 F.3d 922, 941-42 (10th Cir. 1997) (internal citations omitted).

"To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was

not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). He must show that, based upon this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Petitioner's barred claims do not allege innocence. His allegations in Grounds V(B) and V(C), respectively, are that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence presented as proof of his guilt of child pornography, and for failing to raise a claim that the trial court erred in denying his motion to sever the two counts with which he was charged. At best, these claims allege legal innocence, not actual innocence. Because Petitioner has failed to meet the fundamental miscarriage of justice exception, Grounds V(B) and V(C) are procedurally barred from federal habeas review.

Regarding Petitioner's claim in Ground V(A), he alleges appellate counsel was ineffective in failing to raise on direct appeal the claim that the trial court erred in admitting evidence of the DVD showing child pornography. The trial court made specific findings regarding this claim in its Order Denying Application for Post-Conviction Relief:

> Defendant presents no coherent authority supporting a finding that the video admitted at trial showing the child pornography in this case was not admissible. Defendant also does not cite any specific portions of the record which require a finding that the video was not admissible. Defendant seems to present a factual argument that it should not have been admitted because the person in the video other than him was "not merely unidentified, but also unable to be recognized." Such an argument does not present a reasonable issue to be presented on the direct appeal of this case considering the record that was before this Court at the trial court level.

> There was plainly sufficient evidence at trial supporting a finding that the "other person" in the video was the alleged victim in the case based on her

testimony, the testimony of the victim's mother, the appearance of the person in the video and a pillow and pajamas that were present in the video which belonged to the alleged victim. The date stamp on the video showed November 27, 2009. *See* Plaintiff's Ex. 1; Transcript of Jury Trial 12/12/12 at 57-58. The victim stayed overnight at a hotel with Defendant on that night. *See* Plaintiff's Ex. 3; Transcript of Jury Trial 12/13/12 at 7. Victim testified Defendant had sex with her while at the hotel on November 27, 2009 and her face was covered as is depicted in the video. *See* Transcript of Jury Trial 12/13/12 at 7. The victim's mother testified that she watched the video tape and identified the female shown in the video as her daughter based on (1) the pillow with the victim's name on it shown in the video; (2) the victim's pajama pants on the bed; and (3) the fact that as a mother she could recognize her daughter's body. *See* Transcript of Jury Trial 12/12/12 at 55. Considering all of this evidence, "there is not even a reasonable probability that the claim [the video was inadmissible based on lack of identity of the woman in the video] would have succeeded on appeal." *See Logan*, 293 P.3d at 975.

Such foundation evidence plainly supported admissibility of the video in the case. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Okla. Stat. tit. 12, § 2401. "When the relevancy of evidence depends upon fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Okla. Stat. tit. 12, § 2105. The video was clearly relevant because it was the alleged "child pornography" claimed to be possessed by Defendant. To the extent a finding that the alleged victim was the "other person" in the video was a condition to its relevancy and therefore admissibility, there was clearly the introduction of enough evidence to support such a finding in this case based on all of the evidence and testimony at trial.

Accordingly, any claim that this Court's ruling at trial that the video be admitted was in error would be without merit in the present case. Therefore, the appellate counsel's failure to raise that issue on appeal would not support a claim of denial of effective assistance of counsel on appeal.

*State of Okla. v. Bingley*, No. CF-2010-21, slip op. at 3-5 (LeFlore Cty. Dist. Ct. July 18, 2016) (Dkt. 14-5). The OCCA also denied relief on this claim as follows:

> Petitioner's . . . claim is that his appellate counsel was ineffective for failing to argue inadmissible evidence was introduced during his jury trial. This claim is without merit. Petitioner objects to the introduction of a video tape because he claims the victim cannot be identified. There is a substantial amount of evidence in the record that refutes this claim. Petitioner fails to cite to any portion of the record or cite any controlling authority supporting this claim. "The admissibility of evidence is within the discretion of the trial judge, and unless a clear abuse of discretion is shown reversal will not be warranted." *Ashinsky v. State*, 780 P.2d 201, 204 (Okla. Crim. App. 1989) (citing *Palmer v. State*, 1986 OK CR 62, ¶ 10, 719 P.2d 1285, 1288)). Petitioner has failed to establish an abuse of discretion.

*Bingley*, No. PC-2016-367, slip op. at 5.

As stated by the OCCA, the proper standard for analyzing a claim of ineffective assistance of appellate counsel is set forth in *Strickland*. In *Strickland*, the Supreme Court set forth the two-part test for determining the validity of an ineffective assistance of counsel claim: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id*. at 687. The *Strickland* test also applies to appellate counsel. *Evitt v. Lucey*, 469 U.S. 387, 393-400 (1985).

Failure to present a meritless argument does not constitute ineffective assistance of counsel. *Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (citing *Strickland*, 466 U.S. at 691-96); *Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002). *See also Cannon v. Mullin*, 383 F.3d 1152, 1177 (10th Cir. 2004) (citing *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) ("[A]ppellate counsel is hardly ineffective for failure to pursue meritless claims.")); *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding appellate counsel's omission of a meritless issue was not deficient performance).

As shown in the record, and as found by the trial court and the OCCA, the victim clearly was identified by the victim herself and by the victim's mother (Tr. II 52-55; Tr. III 7; State's Exhibit 1). There is no question that a claim of inadmissibility of the DVD based on the lack of identity of the female depicted therein would have failed. Further, the OCCA correctly determined that appellate counsel was not ineffective in failing to raise a claim that the trial court erred in admitting the DVD. This Court finds the OCCA's decision on this claim was not contrary to, or an unreasonable application of, Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented at trial. Ground V(A) of the petition is denied.

**Ground VI: Ineffective Assistance of Trial Counsel**

In Ground VI, Petitioner raises a claim of ineffective assistance of trial counsel. He, however, raised no claims of ineffective assistance of trial counsel on direct appeal, nor did he raise any in his post-conviction application. Nonetheless, in his post-conviction appeal, he raised the claim that trial counsel was ineffective in failing to discover impeachment evidence against P.S. and P.S.'s mother, Shada Bingley, in the "Second Proposition" of his post-conviction appeal (Dkt. 14-6 at 15, 18-19). The OCCA barred this claim as follows:

> Except as related to his ineffective assistance of appellate counsel claim, consideration of Petitioner's claims for relief is waived because they could have been raised in his direct appeal. [*Logan v. State*, 293 P.3d 969, 973]; *Fowler v. State*, 896 P.2d 566, 569 (Okla. Crim. App. 1995); *Walker v. State*, 826 P.2d 1002, 1004 (Okla. Crim. App. 1992). Further, consideration of Petitioner's second claim for relief is also barred by *res judicata* because it was raised in his direct appeal. *Id*.; *Fowler*, 896 P.2d at 569; *Walker*, 826 P.2d at 1004. Post-conviction review is not an opportunity for a second chance to

argue claims of error in hopes that doing so in a different proceeding may change the outcome. *Turrentine v. State*, 965 P.2d 985, 989 (Okla. Crim. App. 1998). "Simply envisioning a new method of presenting an argument previously raised does not avoid the procedural bar." *McCarty v. State*, 989 P.2d 990, 995 (Okla. Crim. App. 1999). Petitioner's remaining claim is that his appellate counsel was ineffective because appellate counsel did not raise the grounds for relief he now raises in his application for post-conviction relief.

*Bingley*, No. PC-2016-367, slip op. at 3.

A state court's procedural bar of a claim which rests on state law, independent of the federal question and adequate to support the judgment, will prevent assertion of error in a federal habeas case unless there is a showing of cause and prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The OCCA's waiver rule is based on Oklahoma law and is considered independent for purposes of federal habeas review. *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014). Adequacy of the rule where ineffective assistance of counsel claims are concerned is determined as set forth in *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998). In *English*, the Tenth Circuit concluded that a procedural bar of claims of inadequate counsel which were waived on direct appeal would only be enforced where "trial and appellate counsel differ and the ineffectiveness claim can be resolved upon the trial record alone," or the claim could have been resolved through utilization of the OCCA's procedural mechanism allowing for remand of ineffective assistance claims on direct appeal. *Id.* The OCCA rules provide a procedural mechanism through which matters outside the trial record can be considered in resolving ineffective assistance of counsel claims. *See* Rule 3.11, *Rules of the Oklahoma Court of Criminal*

*Appeals*, Okla. Stat. tit. 22, Ch. 18, App. (2003) (allowing supplementation of the record on direct appeal for claims of ineffective assistance of trial counsel). *See also Cole*, 755 F.3d at 1159 (finding the petitioner's failure to utilize Rule 3.11 on direct appeal or to challenge its adequacy on habeas review, supported the habeas court's enforcement of the OCCA's procedural bar to the petitioner's ineffective assistance of trial counsel claim).

Where both *English* conditions are met, a petitioner must show cause and prejudice for his default of the claims, or show that a fundamental miscarriage of justice will occur if his claims are not considered. *Coleman*, 501 U.S. at 750. Cause must be something external to the petitioner which cannot be attributed to him. *Coleman*, 501 U.S. at 753. As discussed in *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991), these factors include "interference by officials" and the unavailability of the factual or legal basis of the claim. "[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray*, 477 U.S. at 492. To show that a fundamental miscarriage of justice will occur if the claims are not heard, a habeas petitioner must provide proof of "actual innocence." *Coleman*, 501 U.S. at 748. As stated about in Ground V, "[t]o be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324. A habeas petitioner must show that, based upon this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Here, the record indicates Petitioner was represented by different counsel at trial and on appeal (Dkt. 1 at 27). Thus, the first condition of *English* is satisfied. Concerning the second condition, that the ineffective assistance of counsel claims can be resolved on the trial record alone or after adequately developing a factual record through some other procedural mechanism, all of Petitioner's claims could be resolved based upon the trial record or could have been resolved by utilizing the OCCA's Rule 3.11 to supplement the trial record on direct appeal. Petitioner does not allege that Rule 3.11 is inadequate or is not evenhandedly applied. Therefore, he must show cause excusing the default and actual prejudice flowing from the default to preclude this Court's enforcement of the OCCA's bar of his claims. *See Jamieson v. Jones*, No. CIV-10-1176-M, 2011 WL 1870242, at *9 (W.D. Okla. Apr. 5, 2011) (unpublished), *aff'd*. 444 F. App'x 239 (10th Cir. 2011) (where the petitioner's ineffective assistance of trial counsel claim was procedurally barred by the OCCA and relied upon evidence outside the state court record, the claim would be barred on habeas review absent a showing of cause and prejudice to overcome the bar, because the petitioner failed to utilize Rule 3.11 in his direct appeal or challenge Rule 3.11's adequacy on habeas review).

Petitioner alleges ineffective assistance of appellate counsel as cause for the default of this ineffective assistance of trial counsel claim. He argues trial counsel should have discovered material about the State's witnesses, presumably Shada Bingley and P.S., with which to impeach their testimony. As will be shown, Petitioner's trial counsel ineffectiveness claim is meritless, thus appellate counsel cannot have been ineffective in

failing to raise the claim on direct appeal. *See Dennis v. Poppel*, 222 F.3d 1245, 1261 (10th Cir. 2000) (trial counsel has no duty to raise baseless claims, and if argument which is the basis for alleged ineffectiveness is without merit, it will not support a *Strickland* claim on habeas review).

As previously set forth, the *Strickland* standard provides that in order to establish a valid claim of ineffective counsel, a petitioner must proffer evidence that establishes (1) deficiency in the attorney's performance so serious that the representation does not meet the constitutionally guaranteed "counsel" requirement of the Sixth Amendment, and (2) actual prejudice which was caused by the unsatisfactory performance. *Strickland,* 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. Since *Strickland*, the Supreme Court again has emphasized that:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*Harrington*, 562 U.S. 85, 105 (internal citations and quotation marks omitted).

> Under AEDPA a "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). When evaluating the state court's resolution of *Strickland*'s performance requirement, federal courts must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189-90 (2011)).

*Parker v. Evans*, 569 F. App'x 611, 616 (10th Cir. 2014) (unpublished).

"The question 'is not whether a federal court believes the state court's determination' under *Strickland* 'was incorrect but whether that determination was unreasonable--a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Shiro v. Landrigan*, 550 U.S 465, 473 (2007)).

Petitioner argues that trial counsel should have discovered impeachment evidence to use against Shada Bingley and P.S. at trial. Although he does not specify the nature of this evidence in Ground VI, he mentions two instances of information regarding Ms. Bingley in Ground VII.

Petitioner complains that while he was working in Hawaii, Ms. Bingley forged his name to obtain a loan to pay for a breast augmentation procedure (Dkt. 1 at 21). He further contends he was divorcing Ms. Bingley at this time, and she was overextended on her credit cards and knew he no longer would pay the credit card payments. *Id.* A review of the record reveals that on cross-examination, trial counsel asked Ms. Bingley about the circumstances of the loan for the breast augmentation (Tr. II 68-71). Ms. Bingley testified she signed

Petitioner's name with his permission to obtain the loan and thought the date was in November 2008. *Id.* at 70. She further testified Petitioner took her to the doctor for the surgery, and they spent the night together. *Id.* In addition, Ms. Bingley testified that she and Petitioner separated in January 2010, and their divorce became final in June 2010. *Id.* at 51. Moreover, Ms. Bingley's testimony shows she and Petitioner were not divorcing at the time the breast augmentation occurred, contrary to Petitioner's statement in his petition. The Court finds trial counsel was not ineffective for failing to present evidence of the allegedly forged loan, and appellate counsel was not ineffective for failing to raise this baseless claim on direct appeal.

While trial counsel did not impeach Ms. Bingley with any credit card evidence, her testimony also showed that no divorce proceedings were transpiring prior to the time she became aware of Petitioner's sexual abuse of P.S. Therefore, Petitioner's claim that she was concerned about her credit card payments at this time because he was divorcing her is refuted by the evidence presented at trial. Petitioner has failed to show a reasonable likelihood that the outcome of his trial would have been different had this evidence been used.

Further, even if the alleged evidence had been true and presented to the jury, it only went to Ms. Bingley's credibility and not to any substantive issue in the case. The Supreme Court has held that impeachment evidence that goes to the credibility of a witness generally will not change the result of a trial. "This sort of latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing

that no reasonable juror would have believed the heart of [the witness's] account of petitioner's actions." *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). Thus, trial counsel was not ineffective for failing to present this alleged evidence. Further, appellate counsel was not ineffective for failing to raise this baseless claim on direct appeal. *See Jones v. Gibson*, 206 F.3d 946, ("When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel.") (quoting *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999)).

Petitioner does not identify any evidence he claims trial counsel should have discovered in order to impeach P.S. Therefore, his argument concerning her testimony lacks any support whatsoever and fails to state a claim. *See Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991) (holding that "conclusory allegations without supporting factual averments are insufficient to state a claim."). As stated above, when trial counsel claims have no merit, appellate counsel cannot have been ineffective for failing to raise them. Therefore, Petitioner has failed to show cause to overcome the OCCA's procedural bar of this claim. Having failed to show cause, the issue of prejudice need not be addressed. *See Steele*, 11 F.3d at 1522 n.7.

Although Petitioner alleges he is actually innocent and that a fundamental miscarriage of justice will occur if his claims are not considered, he fails to provide any evidence of his actual innocence as required by *Schlup*. Such a claim does not present a colorable claim of

actual innocence. Thus, this Court must respect the OCCA's bar of this claim and find it to be procedurally barred from habeas review.

**Grounds VII-VIII: Sufficiency of the Evidence and Inadmissible Evidence**

In Ground VII, Petitioner alleges his convictions are not supported by sufficient evidence, and in Ground VIII, he claims the trial court erred in admitting the DVD. These claims were raised in his post-conviction appeal, and the OCCA found that, with the exception of the ineffective assistance of counsel claims, consideration of the claims was waived, because they could have been raised on direct appeal. *Bingham*, No. PC-2016-367, slip op. at 3. Petitioner asserts ineffective assistance of appellate counsel as his cause for failing to raise these claims on appeal.

Petitioner alleges his convictions are not supported by sufficient evidence. He specifically argues that the female on the video (State's Exhibit 1) never was identified. Because both of Petitioner's crimes require a victim under the age of eighteen, he contends the State failed to prove that he engaged in child sexual abuse or that he possessed child pornography. The record, however, absolutely refutes his preposterous claim regarding the identity of the female shown on State's Exhibit 1.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

The OCCA applies the principles of *Jackson* when a defendant challenges the sufficiency of the evidence. In *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985), the OCCA adopted the Supreme Court's holding in *Jackson* as the standard in Oklahoma to evaluate claims of insufficient evidence.

As set forth by the State in its brief on direct appeal, in January 2010, Chris Steichen

was spending the night on Pocohontas Road in Wister, Oklahoma, a house where his sister Shada Bingley, Petitioner (Shada's then-husband), and Mrs. Bingley's three children, P.S., T.B., and C.B. all resided (Tr. II, 27-28). Mr. Steichen frequently spent the night there with the family. *Id*. at 28. Mr. Steichen testified that during the night he got up to get a drink and saw Petitioner suspiciously place a Crown Royal bag into the gun cabinet and then lock the cabinet. *Id*. at 28-29, 34, 41-42. Mr. Steichen could see the outline of a CD case in the bag, but was not exactly sure what it was. *Id*. at 29. Mr. Steichen then went back to sleep. *Id*. at 30.

On January 9, 2010, after Mr. Steichen told Mrs. Bingley what he had seen, she went to the gun cabinet, opened it, unlocked the drawer, and found the Crown Royal bag. *Id*. at 42-43, 52-53. Inside, she found a disc that fit their video camera and several condoms. *Id*. at 54. Mrs. Bingley then retrieved the video camera and placed the disc in it to view what was on the disc. *Id*. On the video, Mrs. Bingley saw Petitioner performing sexual acts with her daughter, P.S. *Id*. at 54-55. Petitioner's face was clearly visible in the video and, although P.S.'s face was not, a pillow case with P.S.'s name on it was visible. *Id*. at 55. Ms. Bingley recognized P.S.'s pajama pants, and Mrs. Bingley knew it was her daughter's body. *Id*. After becoming sick at her stomach at what she was seeing, Mrs. Bingley turned the video camera off, set it on the counter, and ran to P.S.'s room to ask her about the video. *Id*. at 54-56.

Upon confirming the sexual abuse with P.S., Mrs. Bingley took P.S. and the video

camera to her mother's and later to her aunt's house in Talihina. *Id*. at 56. Later that day, Mrs. Bingley, her aunt, and P.S. drove to the child advocacy center in Poteau where they met a law enforcement officer and a nurse. *Id*. at 57. Carol Weddle, a Sexual Assault Nurse Examiner (SANE), testified that she performed a SANE exam on P.S. that day and completed a rape kit and an OSBI sexual assault history form. *Id*. at 175-78. As part of the history Ms. Weddle obtained from P.S., Ms. Weddle noted that P.S. had sex with Petitioner at approximately 3:00 a.m. on January 9, 2010. *Id*. at 183. Ms. Weddle noted that P.S. had erythema (redness) of her vagina and had an erosion the size of a pencil eraser at the posterior fourchette of her vagina. *Id*. at 180-81.

P.S. testified at trial. She was 17 years old at the time of trial, but 14 years old in 2009 (Tr. III, 3, 4). She testified that Petitioner began sexually abusing her when she was 11 years old and that he would have intercourse with her once or twice every couple of weeks in her bedroom late at night. *Id*. at 5-6, 17-18. Petitioner would come into her bedroom and take off her clothes. *Id*. at 6. P.S. always put a pillow over her head so she would not see what he was doing to her, and Petitioner would put his penis in her vagina. *Id*. at 5, 7. She also testified that the last time Petitioner had sexual intercourse with her was one or two nights before January 9, 2010. *Id*. at 5.

P.S. further testified that on November 27, 2009, Petitioner took her to a hotel close to Bricktown [in Oklahoma City], where they spent the night together and had sexual intercourse. *Id*. at 7. Petitioner videotaped the sexual encounter and this video was the disc

that Mrs. Bingley found which was admitted as State's Exhibit Number 1 and published to the jury (Tr. II, 120-21, 132). The sex video is dated November 27, 2009. *Id*. at 159.

As discussed above in Ground V, the trial court made several specific findings regarding the identity of the female in the video in its Order Denying Application for Post-Conviction Relief. *Bingley*, No. CF-2010 at 4. The trial court found "there is not even a reasonable probability that the claim [that the video was inadmissible based on lack of identity of the woman in the video] would have succeeded on appeal." *Id.*

In affirming the denial of relief to Petitioner on his post-conviction ineffective assistance of appellate counsel claim for failing to raise this claim on direct appeal, the OCCA adopted the trial court's findings: "Petitioner objects to the introduction of a video tape because he claims the victim cannot be identified. There is a substantial amount of evidence in the record that refutes this claim." *Bingley*, No. PC-2016-367 at 5. These facts are presumed to be correct by the habeas court, and Petitioner has wholly failed to rebut this presumption. 28 U.S.C. § 2254(e)(1). Thus, Petitioner's video recording of his crimes was properly admitted.

Based upon the evidence set forth above, the jury found Petitioner guilty of both the sexual abuse of P.S. and possessing child pornography. As shown on the Information, Petitioner was charged with sexually abusing P.S. between May 22, 2007, and January 9, 2010 (O.R. 1). Because of this date range, the jury could find that Petitioner sexually abused P.S. based upon her testimony that he last had intercourse with her in the night before her

SANE examination. Petitioner makes no allegations regarding this testimony. In accordance with *Jackson*, reviewing the evidence in the light most favorable to the State, no verdict other than guilty was possible on the charges of sexual abuse of a child and possession of child pornography. Accordingly, any claim that Petitioner's convictions were not supported by sufficient evidence would have been denied by the OCCA on direct appeal. After careful review, this Court finds appellate counsel was not ineffective in failing to raise this claim on direct appeal, and this habeas claim must be denied.

Similarly, Petitioner's allegation that the DVD of his sexual abuse of P.S. was improperly admitted because the female was not identified also would have been denied by the OCCA. Under Oklahoma law, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by [the Evidence] Code. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Okla. Stat. tit. 12, § 2401.

The Court finds that no evidence could be more relevant to the determination of Petitioner's guilt of the crimes charged than the video depicting Petitioner committing the crime of sexual abuse of a child and constituting the child pornography he possessed. As shown above, ample evidence was presented that the female on the DVD was P.S. In fact, as previously addressed, the trial court and the OCCA found sufficient evidence was

presented which identified the female in the video as P.S.

Furthermore, Petitioner admits he made the video or knew the video was made and claims the video shows him having sex with an adult woman with whom he was having an affair (Dkt. 1 at 23). If this were true, he surely knew her identity, and he logically would have called this "mystery woman" to testify. As plainly demonstrated by the record, however, no such woman testified, nor did Petitioner present any evidence regarding this individual as part of his post-conviction proceedings. Therefore, Petitioner has failed to rebut the state court factual findings as required by Section 2254(e). State's Exhibit 1 was properly admitted, and appellate counsel was not ineffective for failing to raise this claim on direct appeal. Grounds VII and VIII of this habeas petition also must be denied.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and Petitioner is denied a certificate of appealability.

**IT IS SO ORDERED** this 19th day of March 2020.

Ronald A. White
United States District Judge
Eastern District of Oklahoma